# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JOEY DYER, # 470852,

                    Petitioner,

v.                                                    Case Number: 08-cv-10368
                                                      Honorable George Caram Steeh

CARMEN PALMER,

                    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

      This is a habeas case under 28 U.S.C. § 2254. Petitioner Joey Dyer, a state prisoner confined at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan,[1] through counsel, filed this habeas petition challenging his 2004 convictions for (1) two counts of assault with intent to murder, MICH. COMP. LAWS § 750.83, (2) one count of first-degree murder, MICH. COMP. LAWS § 750.316A, (3) felon in possession of a firearm, MICH. COMP. LAWS § 750.224F, and (4) felony firearm, MICH. COMP. LAWS § 750.227BA. He was sentenced to concurrent terms of life in prison for the murder conviction, 210 months to sixty years in prison for the assault convictions, and eighteen months to five years in prison for the felon-in-possession conviction. Those sentences are to be served following his mandatory two-year prison term for the felony-firearm conviction.

---

      [1]At the time Dyer filed his habeas petition, he was incarcerated at the Michigan Reformatory in Ionia, Michigan. He has since been transferred to the Earnest C. Brooks Correctional Facility. The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated. Rule 2(a) of the Rule Governing § 2254 Cases; *see also Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006). In most cases where a petitioner is transferred to a different facility after the petition has been filed, the Court would order an amendment of the case caption. However, because the Court is denying the petition in this case, it finds no reason to do so.

For the reasons stated, the Court will deny the petition.  The Court also will decline to issue Dyer a certificate of appealability.

## I. BACKGROUND

Dyer's troubles in this case arise because of a shooting which occurred on September 13, 2003, resulting in the death of Lorenzo Horton.  The prosecution's theory was that Dyer was paid by a man named Avis Kassab, also known as A-1, to murder Horton, in order to prevent Horton from testifying against Kassab in Kassab's alleged murder of a man named Charles Hyche.  The defense's theory was that Horton threatened Dyer to give up his competing drug activities; then, when Dyer refused, Horton gave an instruction to Anthony Thornton to kill him.  Dyer pulled his gun in self-defense, and it went off accidentally during a struggle with Marcus Thornton.  When the gun went off during the struggle, Horton was killed.

Trial in this case began on August 23, 2004, and concluded on August 27, 2004.  The prosecution presented twenty-four witnesses and numerous exhibits.  Dyer testified on his own behalf.

The Michigan Court of Appeals summarized the facts of the case.  The recitation of those facts are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).  They are as follows.

> On the night of the shooting, defendant and his three victims decided to drive to a club for a night out.  Defendant rode in the rear passenger-side seat of the car.  When the group arrived near the club, defendant insisted that the driver park his car on a dark street near an open field.  Defendant then drew his pistol, chambered a new round, and fatally shot the driver under his right ear as the driver turned off the car.  Defendant then turned and shot at, but missed, the ducking front-seat passenger.  When he turned the pistol on the other back-seat passenger, the passenger struggled with defendant and the pistol discharged again, hitting the back-seat passenger in the shoulder.  During the scuffle over the pistol, the front-seat passenger made his escape.  Defendant opened his door, and the back-seat passenger managed to wrestle defendant out the door and escape.  Defendant continued to shoot at the fleeing victims, each of whom summoned assistance.

2

Defendant fled the state and established a relationship with a major drug dealer in Atlanta. Defendant and his new mentor relocated to Florida, where they were picked up with false identification by Florida police. The drug dealer and his girlfriend testified that defendant described the Michigan shooting to each of them, and defendant also admitted to a Florida detective that he "did" the instant offenses.

*People v. Dyer*, No. 258565, 2006 WL 1328842, at *1 (Mich.Ct.App. May 16, 2006).

The Court also finds the following testimony pertinent.

Marcus Thornton testified that he was with his cousins, Horton and Anthony Thornton, on the night in question. They picked up Dyer and went to a bar but left because it was a gay bar. Dyer then suggested another bar. Horton was driving.

Marcus further testified that Horton was ready to put the car in park when Dyer, sitting in the rear behind the passenger seat, whipped out a gun, and shot Horton in the neck. Dyer then aimed at Anthony Thornton in the front-passenger seat. Marcus yelled to warn Anthony. Anthony ducked and Dyer missed. Dyer then aimed at him, but he grabbed Dyer's arm and they tussled over the gun. The gun went off and hit him in the shoulder. The gun then fell out of the car onto the ground. As he ran away, he heard additional shots.

Detroit Police Officers, Jon Chaisson, Thomas Smith, and Michael Jackson testified to finding the car, seeing the injured man, and finding powder cocaine in the front seat and rock cocaine in the back seat. The engine was running and the lights were on. Both passenger doors were open,

and the ignition was punched out, with no key. A shoe was outside the rear-passenger door. Casings from a .40 caliber gun were found on the ground. There was a bullet hole in the windshield.

Anthony Thornton's testimony was similar to that Marcus's. He said Dyer suggested

3

parking away from the bar.  He said he heard a gun cock, then a shot went off.  He felt blood and, thinking he was shot, opened his door and dropped to the ground.  He heard Marcus warning Horton. He saw Dyer holding the gun and ran.  He then heard more shots.

Detroit Sergeant Joseph Tiseo testified to getting a federal-flight warrant against Dyer, and then getting notification from Hernando County, Florida, that he was there.

Donald Smith, a narcotics detective in Florida, testified that Dyer was arrested as part of a drug investigation, and presented a false identification in the name of Marcus Tillery.  After Dyer's arrest for the narcotic charges, Detective Smith advised him of his *Miranda*[2] rights.  Dyer said that he understood his rights.

Detective Smith then discovered Dyer's real name.  He served him with warrants from Michigan.  He informed him of the murder charges pending in Detroit and the drug charges pending in Macomb County.  After serving those warrants on Dyer, Dyer asked Detective Smith about being extradited; he wanted to sign off on the charges.  Detective Smith thought Dyer was talking about the Florida charges so, in order to clarify what Dyer was talking about, he put his hand on the arrest affidavits and the warrant out of the state of Michigan and said, "Are you talking about these charges out of Michigan?"  Dyer answered, "No, I did them."  Dyer then pointed to the drug charges and said, "Yeah, I'm talking about my dope charges.  I didn't know about the drugs in the car."  Trial Tr. vol. II, 120, Aug. 24, 2004.

Norma Rathburn, the girlfriend of David Salyer, who was arrested with Dyer on the Florida drug charges testified that Dyer lived with them in January and February of 2004.  She said Dyer told her he killed three people in Detroit in a car.

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

Debra Horton, mother of the deceased, testified that her son was going to testify in A-1's case. She said he told her A-1 and Leandre Woods killed his friend Hyche. She did not know A-1 or his family. She said her son told her that when he was at the courthouse, A-1's brother followed him into the bathroom. She said he did not testify. He told her he got paid $1500 not to testify and would be getting more. She said he later complained of not being paid and told her he would testify against A-1. Twenty days later he was dead.

Juanita Williams, Horton's sister, gave similar testimony.

David Salyer testified that he was a prisoner of the United States Marshal and boyfriend of Norma Rathburn. He knew Dyer by the name Twin, and brought him from Atlanta to Florida in January 2004. Dyer was assisting him in his drug business. He said Dyer told him that he was in a car with three guys, and he caught the driver in the back of the head. Salyer testified that he faced a variety of state and federal charges and had a deal for leniency to testify against Dyer, but there were no specific promises made.

Detroit Police Officer Barbara Simon was the officer in charge in the killing of Hyche. She testified that Horton was an eyewitness to the fatal shooting. On the night of the shooting, Horton gave a witness statement to Detroit Police Officer Joann Miller. He identified Woods and A-l as the killers. Officer Simon then set up an investigator subpoena for Horton. He appeared and gave a statement under oath, again naming Woods and A-1 as the shooters. A-1 was then arrested and a preliminary examination was set up. Horton appeared in court on the day of the preliminary examination for A-1 but left without testifying. The next day he was back in court and recanted his prior testimony; he testified it was not A-l or Woods who did it. Horton was then told to come back with an attorney, which he did. He then took the Fifth. The case against A-1 was dismissed.

Dyer testified.  He said he was involved in selling crack cocaine and so were Horton and the

Thorntons.  He knew Hyche, but did not know Woods, A-1, or any of A-1's relatives.  He said he

did not attend court on the Hyche killing.  Nor did he agree to kill Horton for money.  He testified

that he normally carried a gun for protection and had previously seen Horton and Anthony Thornton

with guns.  He said he had $4500 when arrested in Florida, which he got from selling drugs.

Dyer further testified that, on the night in question, he did not call Horton or the Thorntons,

but rather, they arrived unexpectedly at his house.  He said they drove to a bar but it was a gay bar,

so he suggested another bar.  Horton approached the bar, but then drove down the street, saying he

wanted to finish his drink.  Horton parked the car.  Dyer testified that he and Marcus were in the

back seat, while Anthony was in the front seat.  He said Horton complained that he should not be

selling drugs, because it was competition, and directed him to start selling for him.  Dyer said he

refused.  He said Horton threatened that, if he did not sell for him, then he could not sell at all.  Dyer

said he insisted on being taken home.  Horton told him he was screwing up, and then told Anthony

to get his gun, which apparently was in the trunk of the car, and shoot him.  When Anthony went

for his gun, he pulled out his own gun in self-defense.  He said Marcus then grabbed his hand and

the gun went off while they were scuffling.  During the scuffle, the gun went out the window to the

ground.  He ran off, abandoning the gun.  He said he ran through a field and then heard shooting.

He learned the next day that Horton had died.

The jury convicted Dyer of the above-stated charges.

Following his sentencing, Dyer filed a direct appeal with the Michigan Court of Appeals,

raising the following ten claims: (1) the introduction of hearsay violated his right of confrontation,

(2) the prosecutor's assertions of fact violated his right of confrontation, (3) the prosecutor shifted

the burden of proof, (4) the trial court improperly admitted bad-act evidence, (5) the trial court improperly admitted a statement made by him in response to police questioning in Florida, thereby violating discovery and his *Miranda* rights, (6) he was denied a fair trial by the prosecutor's questions demanding that he comment on whether certain prosecution witnesses were lying, (7) he was denied a fair trial by rulings excluding defense evidence, while allowing similar evidence on behalf of the prosecution, (8) the trial court improperly denied the request to instruct on manslaughter, (9) the trial court improperly instructed the jury on the elements of the crime, and (10) his trial counsel was ineffective.

The Court of Appeals affirmed his convictions. *Dyer*, 2006 WL 1328842, at *1-5. He then filed an application for leave to appeal with the Michigan Supreme Court, raising the same claims. The Supreme Court denied the application. *People v. Dyer*, 477 Mich. 1003, 726 N.W.2d 51 (2007).

Dyer neither filed a post-conviction motion with the state-trial court nor a writ of certiorari with the United States Supreme Court. Rather, on January 25, 2008, he filed this habeas action raising the following nine claims:

I.   Denial of a fair trial and other rights by [the] prosecutor's assertions of fact that violated confrontation rights.

II.  Denial of a fair trial and other rights by the incessant introduction of testimony that violated confrontation rights.

III. [Dyer] was denied a fair trial by [the] prosecutor['s] statements shifting the burden of proof to him.

IV.  [Dyer] was denied a fair trial by improper testimony of other bad acts.

V.   Improper admission of his statement made without *Miranda* warnings to police in Florida and violation of discovery.

VI.  [Dyer] [was] denied a fair trial by rulings excluding defense evidence while allowing similar evidence for the prosecution.

7

VII.    [The trial court] improperly denied [the] request to instruct on manslaughter.

VIII.   [Dyer] was denied a fair trial by instructions telling the jury that elements of the crime could be presumed.

IX.     [Dyer] was prejudiced by ineffective assistance of counsel.

Respondent, through the State Attorney General, argues in his answer to the petition that claims one, two, and three are procedurally defaulted because Dyer failed to lodge a contemporaneous objection and are thus barred from federal-habeas review by this Court, claims four, six, seven, and eight are based solely on state law and therefore are beyond the authority of the Court to adjudicate, and claim five is meritless.  Respondent does not address claim nine as a separate claim, but rather addresses it as cause and prejudice argument to Dyer's claims that Respondent alleges are procedurally defaulted.

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Court's habeas review of state-court decisions.  Under the AEDPA, a federal court's review of a habeas proceeding is limited.  A federal court may not grant a writ of habeas corpus unless the state adjudication on the merits either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).

The Supreme Court clarified that standard in *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000):

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Recently, in *Harrington v. Richter*, --- U.S. ---, 131 S.Ct. 770, 786 (2011), the United States

Supreme Court held:

A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, [] (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.* "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. ----, ----, 129 S.Ct. 1411, 1413-14, [] (2009) (internal quotation marks omitted).

With those standards in mind, the Court proceeds to address Dyer's claims.

### III. DISCUSSION

**A. Claim I–Confrontation Clause Violation Regarding Prosecutorial Factual Assertions**

In his first habeas claim, Dyer alleges that he was denied a fair trial when, during his cross-examination, the prosecutor made factual assertions under the guise of questioning. Dyer denied the assertions, and the prosecutor made no effort to prove that the assertions were true. Rather, the prosecutor named the individuals who would testify that he was not truthful, but she did not call them. It is Dyer's position that it was his word against the prosecutor's word, not subject to cross-examination, and thus violating his right to confront the witnesses against him.

Although couched as a Confrontation-Clause violation, the Court finds that Dyer is effectively alleging that the prosecutor committed misconduct. The Court of Appeals appears to

have addressed it as such.  The Court will therefore first address this claim under the rubric of a prosecutorial-misconduct claim.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances.  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974).

The first question to consider is whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006); *see also United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001).  If they were, the Court must decide whether the improper acts were so flagrant as to warrant relief.  *Carter*, 236 F.3d at 783.  Flagrancy depends on four factors: (1) whether the actions mislead the jury or prejudiced the defendant, ( 2) whether the actions were isolated or represent a pervasive course of conduct, (3) whether the actions represent a deliberate attempt to affect the outcome of the case, and (4) the overall strength of the case.  *Id*.

The Court focuses on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).  "[T]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial[-]misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle*, 457 F.3d at 516 (quoting *Donnelly*, 416 U.S. at 645).

In *Berger v. United States*, 295 U.S. 78 (1935), the United States Supreme Court stated:

> [A prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its

obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor–indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

*Berger*, 295 U.S. at 88.

The Court recognizes that it is improper conduct for a prosecutor to ask questions which imply a factual predicate which he or she knows cannot be supported by evidence or for which he or she has no reason to believe that there is a basis for truth. *United States v. Harris*, 542 F.2d 1283, 1306-07 (7th Cir. 1976) (citations omitted). The Seventh Circuit in *Harris* stated:

In certain cases the [prosecutor] has a duty to introduce evidence showing the factual predicate if the answer of the witness is unfavorable. For example, in *United States v. Bohle*, 445 F.2d 54, 73-74 (7th Cir. 1971), this court referred to cases holding that when an attorney lays a foundation by asking a witness about prior inconsistent statements, it is reversible error to fail to produce the person to whom the statement was made if the witness denies making the statement. Similarly, it has been held that a witness may not be cross-examined regarding prior convictions if the examiner does not have a certified record of the conviction available to rebut a denial of the conviction. *State v. Williams*, 297 Minn. 76, 210 N.W.2d 21 (1973); *cf. Ciravolo v. United States*, 384 F.2d 54 (1st Cir. 1967). Finally, it has been held improper to ask inflammatory questions where it was agreed by the [prosecutor] that the matters which the questions implied would not be introduced into evidence. *Richardson v. United States*, 150 F.2d 58 (6th Cir. 1945). On the other hand, cross-examination has sometimes been permitted where evidence is available but where counsel has no present intention of introducing it or where counsel has no factual foundation but a reasonable suspicion that the circumstances might be true. *Hazel v. United States*, 319 A.2d 136 (D.C.App.1974) (The accused was the source of the information but counsel had no intention of calling him to the stand); *United States v. Pugh*, 141 U.S.App.D.C. 68, 436 F.2d 222 (1970) (The witness had testified that he was going

11

to visit a male when robbed; on cross-examination he was asked, on mere reasonable suspicion, if he was not actually going to see a female). That under the traditional rule courts may permit inquiry into collateral matters on cross-examination even though the examiner will be "bound by the answer" implies that the examiner does not have a duty in every case to introduce the factual predicate for his question.

*Harris*, 542 F.2d at 1307.

The Court of Appeals addressed this claim on the merits, rejecting the claim, finding that

Dyer failed to demonstrate that the prosecutor lacked any factual basis to question him about his

inconsistent statements or other collateral matters. It stated in pertinent part:

> Defendant next argues that the prosecutor's cross examination of defendant also violated his right to confrontation by injecting unsubstantiated innuendo into the trial. Assuming without deciding that a prosecutor's question, even one loaded with innuendo, can deprive a defendant of a right to confrontation, defendant fails to demonstrate any misconduct requiring reversal. Regarding the innuendo injected by the prosecutor's impeachment of defendant with his prior inconsistent statements, "extrinsic evidence may not be used to impeach a witness on a collateral matter . . . even if the extrinsic evidence constitutes a prior inconsistent statement of the witness, otherwise admissible under MRE 613(b)." Therefore, it goes without saying that, "the examiner does not have a duty in every case to introduce the factual predicate for his question." This includes a cross examination "where evidence is available but where counsel has no present intention of introducing it or where counsel has no factual foundation but a reasonable suspicion that the circumstances might be true." This might occur because a criminal defendant is the source of the collateral information, and the prosecutor has no inclination to call him in the prosecutor's case in chief.

> The general rule is that innuendo in a cross examination question is not misconduct unless the prosecutor lacks a legitimate factual basis for the question, or if a legal (as opposed to a procedural) restriction or other factual circumstance precludes the prosecutor from introducing the factual basis for the question. Applying the rule to defendant's case, defendant fails to demonstrate that the prosecutor lacked any factual basis to question defendant about his inconsistent statements or the other collateral matters. In fact, the record indicates that before trial defense counsel perused a substantial amount of the information containing the questions' factual underpinnings. Therefore, defendant has failed to demonstrate abuse of discretion by the court or misconduct by the prosecutor.

*Dyer*, 2006 WL 1328842, at *2 (citations omitted).

In this case, the Court of Appeals relied on *Harris* for its conclusion that Dyer failed to demonstrate misconduct by the prosecutor. The Court finds that the Court of Appeals's decision was not contrary to, or an unreasonable application of, federal law. Dyer has not shown that the prosecutor's remarks were so prejudicial as to render the entire trial unfair. He is not entitled to habeas relief on this claim.

Rather, the Court finds that the prosecutor properly cross-examined Dyer regarding his actions and statements to others, in order to discredit his claim of self-defense and accident and to support the prosecution's theory that he was hired to murder Horton.

Dyer alleged at trial that Horton unexpectedly showed up at his home with the Thorntons, and, as the four were on their way to a bar, Horton parked the car and threatened him. According to Dyer, Horton told him to give up his drug-dealing activities because they were causing competition. Dyer alleged that when he refused to given in to Horton's demands, Horton told Anthony Thornton to kill him. Dyer claimed he pulled his gun in self-defense, but the gun accidentally went off during a struggle with Marcus, and, as a result, Horton was killed. Dyer admitted that Horton said, "Get my gun out of the trunk so I can kill him," which meant that Horton was not armed at the time. Trial Tr. vol. IV, 29, Aug. 26, 2004. The question about whether he told Horton's sister's boyfriend, Dujuan Sparks, to never let anyone sit behind you because "[h]e can kill you" also was an appropriate line of questioning posed to undermine Dyer's theory of self-defense. Trial Tr. vol. IV, 30, Aug. 26, 2004.

The prosecution also properly questioned Dyer about the night Hyche was killed. The prosecutor's theory at trial was that Dyer was paid by A-1 to murder Horton to prevent Horton from testifying against A-1 in A-1's alleged murder trial of Hyche. Thus, questions posed to Dyer

13

regarding his connection to those present during Hyche's shooting were relevant.

Additionally, establishing a connection between A-1 and Dyer and Horton was essential to the prosecution's theory of the case, and therefore questions along that line were permissible.

Contrary to Dyer's claims, the prosecutor did not "testify" in this case through the questions she posed. She simply asked questions designed to elicit relevant and admissible evidence regarding his own actions and statements to others. In contrast to *Berger*, her questioning in this case was not improper because she introduced, during her case-in-chief, testimonial evidence from the Thorntons, Norma Rathburn, Horton's mother and sister, and David Salyer, which essentially established what she was insinuating during the questioning of Dyer. Under those circumstances, the prosecutor's conduct was not improper.

Several cases have rejected similar claims from habeas petitioners, finding there to be no violation of the federal constitution for a prosecutor in a state criminal trial to ask the defendant certain questions. *See Davis v. Burt*, 100 F.App'x. 340, 347 (6th Cir. 2004) (prosecutor's cross-examination of habeas petitioner about whether he thought witnesses were lying or mistaken was not so egregious as to entitle him to habeas relief); *Knapp v. White*, 296 F.Supp.2d 766, 778-79 (E.D. Mich. 2003) (petitioner failed to show how he was harmed by the prosecutor's improper question to comment on the credibility of a prosecution witness, particularly since his defense was that several witnesses were lying in favor of the prosecution); *Welch v. Burke*, 49 F.Supp.2d 992, 1005-06 (E.D. Mich. 1999) (although questions to habeas petitioner about the credibility of witnesses may have been improper under state law, the prosecutor's questions did not deprive petitioner of a fair trial under federal-constitutional standards).

Additionally, the Court concludes that Dyer's Confrontation-Clause rights were not violated.

14

The Confrontation Clause of the Sixth Amendment applies to state-court proceedings. *Pointer v. Texas*, 380 U.S. 400, 403 (1965). It provides a criminal defendant with "the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987); *see also Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (explaining that "'[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination'") (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)).

"Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Statements are "testimonial" when taken during the course of police interrogations and "when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006); *see also Miller v. Stovall*, 608 F.3d 913, 924 (6th Cir. 2010) (stating that "[t]he proper inquiry . . . is whether the declarant intends to bear testimony against the accused [which] in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime" (quoting *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004)).

Here, the Court concludes that the questions posed by the prosecutor in this case did not infringe on Dyer's Confrontation Clause rights because only his answers were evidence. And, Dyer's answers rejected as untrue the questions the prosecutor posed. The prosecutor's decision not to call witnesses to refute Dyer's testimony is a decision she was permitted to make because, as with other witnesses, the prosecutor may simply elect to let a petitioner's denials go un-rebutted.

15

Although a petitioner has a constitutional right to confront the witnesses against him, in this case, Dyer cannot point to any precedent suggesting he therefore has the right not to be cross-examined or that he can compel the prosecution to admit certain evidence.

The Court concludes that Dyer is not entitled to habeas relief regarding this claim.

### B.  Claim II–Confrontation Clause Violation Regarding the Admission of Certain Hearsay Testimony

In his second habeas claim, Dyer alleges that he was denied his right to confront the witnesses against him when statements Horton made to others were admitted at trial.  To the extent Dyer asserts a federal violation, a denial of his right to confrontation in violation of *Crawford*, the claim is without merit.

The Supreme Court made clear that the Confrontation Clause applies only to out-of-court statements that are "testimonial" in nature.  *See Whorton v. Bockting*, 549 U.S. 406, 418-20 (2007) (explaining that, under *Crawford*, the Confrontation Clause has no application to non-testimonial out-of-court statements); *Davis*, 547 U.S. at 821 ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.").

The *Crawford* Court did not define the term "testimonial," but it "provided examples of those statements at the core of the definition, including prior testimony at a preliminary hearing, previous trial, or grand jury proceeding, as well as responses made during police interrogations."  *United States v. Saget*, 377 F.3d 223, 228 (2d Cir. 2004) (citing *Crawford*, 541 U.S. at 51-52).  However, a non-testimonial statement is no longer subject to Confrontation Clause scrutiny at all.  *See Doan v. Carter*, 548 F.3d 449, 458 (6th Cir. 2008) (citing *Giles v. California*, 544 U.S. 353, 359 (2008)

16

and *Crawford*, 541 U.S. at 51).

The Court of Appeals addressed this claim on the merits, rejecting Dyer's claim because he did not have a right to confront a witness whose very absence was caused by his having killed him. This Court agrees. The Court of Appeals stated in pertinent part:

> On appeal, defendant first argues that the trial court erred in allowing the prosecutor to admit statements made by the driver weeks before the shooting. Defendant argues that the statements violate his right to confrontation as delineated by the United States Supreme Court in *Crawford v Washington*, []. We disagree. The statements at issue involved one of the many subplots that unfolded in defendant's four-day trial. The trial court introduced the statements to suggest that a man named Avis Kassab arranged the driver's murder to prevent the driver from testifying about a murder Kassab committed in the driver's presence. The driver's statements indicate that he took a bribe from Kassab's brother, but Kassab later failed to pay off the balance of the bribe, so the driver decided to breach the agreement and testify against Kassab. Because the driver's own statements implicated him for accepting a bribe to commit perjury, this hearsay falls squarely within the exception for statements against a declarant's penal interest. Nevertheless, defendant does not challenge the technical exceptions to hearsay, but exclusively argues that the evidence violated his right to confront the witnesses against him. In this regard, defendant fails to distinguish *People v Jones*, [], in which our Court held a defendant does not have a right under *Crawford* to confront a witness whose absence the defendant has wrongfully procured. Because the overwhelming evidence indicated that defendant wrongfully procured the driver's absence by unlawfully killing him, defendant fails to establish that the evidence violated his constitutional right to confront the driver.

*Dyer*, 2006 WL 1328842, at *2 (citations omitted).

In this case, there is nothing at all testimonial about the Horton's statements to his family members. The statements were not made to a police officer or a government informant seeking to elicit the statements to further a prosecution. Statements to family and friends are not testimonial for purposes of the Confrontation Clause. *Crawford*, 541 U.S. at 51.

Horton's mother and sister both testified at trial.

Of course, habeas relief may not be based upon perceived errors of state law. *Estelle v.*

17

*McGuire*, 502 U.S. 62, 67-68 (1991).  The role of a habeas court is not to pass upon the correctness of the trial court's evidentiary rulings, but rather is limited to determining whether the rulings denied a petitioner "a constitutionally guaranteed right."  *Moore v. Tate*, 882 F.2d 1107, 1109 (6th Cir. 1989).

Dyer's argument, that the trial court erred in allowing Horton's mother's and sister's testimony regarding statements he made to them, is essentially based on alleged violations of Michigan law and the Michigan Rules of Evidence.

Nonetheless, when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994). Dyer has not met that burden because the evidence against him was overwhelming.  He carried out a planned attack on Horton and Horton's two cousins.  He succeeded in killing Horton; the cousins survived.  His claim at trial that he was defending himself was completely undercut by the physical evidence presented at trial, as well as his own acknowledgment that Horton did not have a gun in the car.  Thus, even if trial counsel could have kept the victim's statements out of evidence, Dyer's shooting and killing Horton could not have been overcome.  Because Dyer cannot demonstrate trial error that was of such magnitude that it fatally infected the trial, he cannot establish a denial of due process.

The Court concludes that Horton's statements to his mother and sister were not testimonial in nature, and that *Crawford* and the Confrontation Clause are simply not implicated in this case. Moreover, Dyer procured the absence of Horton by killing him, thus, he cannot now invoke claims founded on Horton's absence.  Dyer is not entitled to habeas relief regarding this claim.

18

### C.  Claim III–The Prosecutor Improperly Shifted the Burden of Proof

In his third habeas claim, Dyer alleges that the prosecutor shifted the burden of proof to him, during cross-examination, when she asked whether he had any evidence to support his claim that he left town three days after the murder because his grandfather died.

A prosecutor may not shift the burden of proof to a defendant.  *See*, e.g., *United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir. 1993).  A prosecutor may, however, highlight inconsistencies or inadequacies in the defense, *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005), and point out the lack of evidence supporting the defense theory.  *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005).

The Michigan Court of Appeals rejected this claim, stating:

> Defendant also argues that the prosecutor shifted the burden of proof to him, but the prosecutor's isolated comment merely expressed the legal reality that nothing required her to prove or disprove defendant's theory, *People v. Nowack*, 462 Mich. 392, 400; 614 N.W.2d 78 (2000), and legitimately emphasized defendant's failure to call corroborating witnesses.  *People v. Fields*, 450 Mich. 94, 115-116; 538 N.W.2d 356 (1995).  Therefore, the isolated comment did not shift the burden of proof to defendant.

*Dyer*, 2006 WL 1328842, at *3.

In this case, Dyer elected to testify.  As part of his direct testimony, he asserted he did not flee the State after the killing, as the prosecution suggested, but rather, left the State because his grandfather died and he wanted to be with his relatives.  The prosecutor properly questioned him about his ability to produce evidence or witnesses to corroborate his testimony.  The prosecutor can properly comment on a defendant's failure to call corroborating witnesses, and may question him about that failure because it bears on the credibility of his testimony.

The prosecution never shifted the burden of proof, and the jury was explicitly instructed that

19

the State "must prove each element of the crime beyond a reasonable doubt" and that Dyer was "not required to prove his innocence."  Trial Tr. vol. IV, 155, Aug. 26, 2004.  Furthermore, the trial court prefaced its instructions on the elements of each offense by stating the prosecution must prove each of the elements of the charges beyond a reasonable doubt.

Accordingly, the Court concludes that Dyer is not entitled to habeas relief regarding this claim.

### D.  Claim IV–Improper Admission of Other-Bad-Act Evidence

In his fourth habeas claim, Dyer alleges that he was denied a fair trial when the prosecution presented evidence that he was involved with drugs in Florida after leaving Michigan, that he had a phony identification, and that he had on prior occasions possessed guns that he purchased illegally. He also claims the prosecution improperly cross-examined him as to whether he had two or three girlfriends, whether he was "chillin' like a villain," whether he liked to listen to gangster rap music and watch gangster movies, and whether he was involved in drug-dealing activities.

Dyer's claim that the state court violated Michigan Rule of Evidence 404(b) by admitting that evidence is non-cognizable on habeas review.  *See Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).  The admission of the "prior bad acts" or "other acts" evidence against Dyer at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the

form of "prior bad acts" evidence.  *Bugh*, 329 F.3d at 512 ; *Adams v. Smith*, 280 F.Supp.2d 704, 716 (E.D. Mich. 2003).

As discussed *supra*, habeas relief may not be based upon perceived errors of state law.

20

*Estelle*, 502 U.S. at 67-68.  Only when an evidentiary ruling is "so egregious that it results in a

denial of fundamental fairness," may it violate due process and warrant habeas relief.  *See Bugh*, 329

F.3d at 512.

In addressing, and rejecting this claim, the Michigan Court of Appeals found that, because

the evidence was either proper or innocuous, any alleged error resulting from its admission was

harmless.  It stated in pertinent part:

> The evidence cited by defendant ranged from rather innocuous evidence of
> defendant's taste in "gangster" films and "gangster" rap to evidence of his
> involvement in the illicit drug trade and his purchase of illegal firearms.
> Nevertheless, defense counsel insinuated early on in the case that defendant acted in
> self-defense because the driver and front-seat passengers were rival drug dealers who
> had decided to kill defendant.  "[E]rror requiring reversal cannot be error to which
> the aggrieved party contributed by plan or negligence . . . ."  Other evidence of
> defendant's drug activities served the legitimate purpose of negating defendant's
> claim that he received a large sum of money through sales of drugs rather than
> through a contract to murder the driver.  Therefore, this evidence did not deprive
> defendant of a fair trial.  Although the evidence of defendant's illicit ownership of
> other pistols was largely irrelevant, the trial court properly curtailed this evidence
> when defendant objected, and nothing suggests bad faith on the part of the
> prosecutor.  Besides, any prejudice defendant suffered from the jury's knowledge
> that he had once owned other illegal firearms pales in comparison to the prejudice
> he legitimately suffered from the evidence that he was a drug-dealing felon who was
> concealing an illegally owned pistol on the night of the shooting.  Similarly, the
> prosecutor's passing references to defendant's slang, tastes, or number of girlfriends
> did not garner objections and were not so prejudicial that they were incurable.
> Exclusion of the questionable evidence most likely would not have altered the
> verdict, so any error in its introduction was harmless.

*Dyer*, 2006 WL 1328842, at *3 (citations omitted).

The Court concludes that Dyer has failed to show that the admission of the evidence was trial

error, or if so, that the error was so grave as to constitute a violation of his Constitutional rights.  The

trial court properly admitted evidence of Dyer's ownership of guns, his drug dealing, his criminal

charges in Florida, and his use of an alias while in Florida.  The weapon evidence was relevant

because it was probative of whether he carried the illegal weapon on the night of the murder for protection or because he planned to kill Horton. After Dyer testified that the two- or three-month period preceding the murder was not the only time he needed protection, and thus needed a gun, the trial court simply allowed the prosecutor to question him about whether he had previously carried guns for protection.

The admission of evidence that Dyer was involved in drug dealing after the murder also was not error. The evidence was relevant because it explained the relationship between Dyer, David Salyer, and Norma Rathburn. That Dyer and Salyer were involved in business together, with Dyer being Salyer's "heir apparent" in his drug-trafficking operation, made it more likely that he would tell Salyer about his crimes and admit to Salyer's girlfriend, Ms. Rathburn, that he had been paid to commit them.

Evidence regarding Dyer's drug dealing also was probative of the origin of the $4,500 he claimed he possessed at the time of his arrest. Despite his claim that the money was proceeds of drug sales, the evidence supported the prosecution's theory that he had been paid to murder Horton.

Evidence that Dyer faced drug charges in Florida also was relevant because, as the trial court determined, in addition to explaining the circumstances surrounding his apprehension in Florida, the evidence was essential for the jury to understand the detective's testimony regarding Dyer's admissions. The trial court recognized the possibility of unfair prejudice from the evidence and mitigated any potential prejudice by ruling that the witness could not indicate the nature of the Florida charges. Dyer, however, requested that the information be disclosed, and so it was.

Evidence of Dyer's use of the alias Marcus Tillery, and his efforts to obtain a Florida driver's license under that name, also was relevant because it was one of a series of events that culminated

with his statement to the detective regarding the instant case and was necessary for the jury to have a full understanding of the events.  The use of an alias also demonstrated his consciousness of guilt. The evidence was relevant to the credibility of Ms. Rathburn and Mr. Salyer because it corroborated their testimony regarding the name he was using in Florida.

Against that backdrop, the Court concludes that Dyer has failed to show that his constitutional rights, regarding this claim, were violated at trial.  Moreover, even if he could show a violation, he cannot demonstrate prejudice given the overwhelming evidence presented against him.  If the other-acts evidence had been barred, he would have lost one of his defenses, that he was targeted by the victim because his drug dealing was infringing on the victim's territory, and he would not have been able to overcome properly-admitted evidence that he was a felon who was concealing an illegally owned pistol on the night of the shooting, which was used to kill the victim.

The Court concludes that Dyer is not entitled to habeas relief regarding this claim.

### E.  Claim V–Improper Admission of Dyer's Statement to the Police

In his fifth habeas claim, Dyer alleges that the trial court improperly admitted a statement made by him in response to police questioning in Florida, because of a discovery violation, and because no *Miranda* warnings were provided to him.  The Michigan Court of Appeals rejected these arguments because Dyer failed to provide any support that the evidence violated his right to discovery, and because he, in fact, initiated the conversation with the officer.   Volunteered statements by a person in custody are not barred by the Fifth Amendment, *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980), and a conversation that is designed to convey information, rather than elicit a response, is not an interrogation.  *Id.* at 300.

The Court of Appeals stated:

23

Defendant next argues that the trial court erred in allowing the introduction of a detective's testimony that defendant essentially admitted he committed the crimes. We disagree. Defendant first argues, without citation to authority, that the testimony violated his right to discovery. The record indicates that the witness was listed by the prosecutor, and nothing indicates that the trial court ordered the prosecution to provide defendant with a transcript of what she expected her witnesses to reveal at trial. When the witness informed the prosecutor that he could testify about defendant's statements, the prosecutor immediately notified defendant, and the trial court, in light of the new information, offered defendant more time to prepare for the witness's cross examination. Under the circumstances, the trial court and prosecutor took every reasonable step to preserve defendant's rights. Moreover, because the detective testified that defendant initiated the conversation, and the detective's responses to defendant were in no way perceivable as statements to elicit an incriminating response, [], the trial court did not clearly err when it held that defendant's statement was admissible despite the lack of *Miranda* warnings.

*Dyer*, 2006 WL 1328842, at *4 (citation omitted).

With respect to Dyer's claim that his statement to the officer in Florida should not have been admitted because it amounted to a violation of discovery, the claim is wholly without merit. Dyer was well aware prior to trial that the prosecution might present evidence about admissions he made to a Florida officer. And, as the Court of Appeals found, the officer in question was listed as a witness by the prosecution, and when the prosecution was informed by the witness that he could testify about Dyer's statements, the prosecutor immediately notified the defense and the court and offered Dyer more time to prepare for the witness' cross examination. Dyer has failed to cite to any federal precedent suggesting that he either has a constitutional right to the type of discovery he now suggests, or that such an alleged right was violated.

Additionally, his claim that his statements to the Florida detective should have been suppressed because he had not been given his *Miranda* rights is clearly without merit because he initiated the conversation with the officer, and the conversation did not amount to an interrogation.

The trial court properly rejected Dyer's claim of a *Miranda* violation. The trial court

24

explained, "we don't have a failure to give his warnings, *Miranda* Warnings, because your client initiated this at the time that he was being served with the extradition. He starts the conversation by asking a question. So, the officer is responding to him. He doesn't have to give him his rights." Trial Tr. vol. II, 128, Aug. 24, 2004.

The Court concludes that Dyer has failed to show that the state appellate court's decision, rejecting these claims, was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Therefore, he is not entitled to habeas relief.

### F. Claim VI–Evidentiary Errors

In habeas claim six, Dyer alleges that he was denied a fair trial by the trial-court rulings excluding defense evidence, while allowing similar evidence on behalf of the prosecution. The Michigan Court of Appeals also rejected this claim because Dyer abandoned it by failing to explain how the trial court erred, and because the record revealed the claimed similarities regarding the evidence were mischaracterized by petitioner.

As discussed *supra*, this claim is non-cognizable as a challenge to the correctness of the trial court's evidentiary rulings. Dyer fails to federalize his claim where he cannot cite to any federal authority to support his contention that the trial court unfairly let the prosecution do what he was denied. Dyer abandoned this claim in the state courts by failing to explain how the trial court erred in admitting some evidence and not other evidence, and he does so again in this court by failing to explain how his constitutional rights were violated. Dyer attempts to categorize this claim as a denial of his right to present a defense, but fails because he does not articulate how the trial court violated his rights.

The Court concludes that he is not entitled to habeas relief regarding this claim.

25

### G.  Claim VII–Failure to Instruct on Manslaughter and
### Claim VIII–Improper Jury Instructions

In his seventh habeas claim, Dyer alleges that the trial court improperly refused to instruct the jury regarding a manslaughter charge.  In his eighth habeas claim, he alleges that the trial court erred in instructing the jury that it could presume intent.

Generally, jury instructions in state trials are matters of state law and procedures not involving federal constitutional issues, and are not reviewable in a federal-habeas proceeding. *Nickerson v. Lee*, 971 F.2d 1125, 1137 (4th Cir. 1992).

The burden of establishing that an instructional error is deserving of habeas relief is on the petitioner, and it is a particularly heavy one.  In order for habeas-corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous, or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  *Estelle*, 502 U.S. at 72.

The Court of Appeals rejected both of these claims, finding:

> Finally, defendant argues that the trial court erred in its jury instructions by instructing the jury that it could presume intent and by denying his motion to instruct on voluntary manslaughter.  Defendant's first argument fails because it lacks factual foundation.  The trial court correctly instructed the jury that it could "infer," not presume, the intent to kill from the use of a deadly weapon in a way likely to cause death.  Regarding voluntary manslaughter, neither defendant's nor his two surviving victims' version of events suggested that defendant intentionally killed the driver under circumstances that would suggest voluntary manslaughter.  The victims testified that defendant began shooting without any preliminary discussion.  Defendant's testimony suggested that he pulled the pistol in fear of his life, but the back-seat passenger grabbed it before he could shoot, causing the pistol to repeatedly, but accidentally, discharge.  The victims' testimony does not suggest a heated argument, threats generating "hot blood," or any imperfect defense, and defendant's testimony does not suggest intent.  Therefore, no rational view of the evidence supported the instruction, and the trial court did not abuse its discretion by denying defendant's motion.

26

*Dyer*, 2006 WL 1328842, at *4-5 (citations omitted).

Dyer cannot meet this burden because, as the Court of Appeals held, he cannot demonstrate that a manslaughter instruction was warranted, nor can he show that the trial court erred in instructing the jury that they could infer, not presume, an intent to kill from the use of a deadly weapon in a way likely to cause death. Although Dyer claims the evidence at trial supported an instruction on manslaughter, there, in fact, is nothing in the record to suggest he intentionally killed Horton in the heat of passion. The testimony of the two surviving victims established that Dyer began shooting without any preliminary discussion. His own testimony during cross-examination established that the victim wasn't a threat to him. He testified that he pulled his pistol in fear of his

life, but the back-seat passenger grabbed it before he could shoot. His testimony alleged he accidentally shot the victim, as opposed to him intentionally shooting the victim out of hot blood.

Furthermore, Dyer cannot demonstrate that he was prejudiced by the absence of a manslaughter instruction. The jury was instructed on first-degree murder, second-degree murder, self-defense, and accident, and returned a verdict of guilty of first-degree murder. The jury's rejection of second-degree murder shows that any alleged error in not instructing on manslaughter did not undermine the reliability of the verdict. Moreover, even assuming *arguendo* that a rational view of the evidence supported the requested instruction, substantial evidence did not. Instead, the evidence as a whole supported only two possible verdicts, guilty of first-degree murder, or not guilty because the shooting was accidental or Dyer acted in self-defense.

Furthermore, it is well established that, "[a] jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). In this case, the Court finds that the trial court

properly instructed the jury.

In conducting federal-habeas review of an alleged constitutional trial error, the Court will consider the error to be harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). If a federal judge in a habeas proceeding "is in grave doubt about whether a trial error of federal law has substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless. And, the Petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation omitted).

Here, the Court is not in grave doubt. Rather, the Court concludes that, even if the trial court had erred, that error did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

Accordingly, the Court concludes that Dyer is not entitled to habeas-corpus relief with respect to these claims.

## H.  Claim IX–Ineffective Assistance of Counsel

In his ninth and final claim, Dyer alleges ineffective assistance of counsel. He argues that trial counsel was ineffective for failing to object to the prosecutor's innuendos, the admission of other-acts evidence, the alleged shifting of the burden of proof by the prosecutor, the improper jury instruction given on presumptions, the ruling on hearsay, the prosecutor making him comment on the credibility of the prosecution's witnesses, and the lack of even-handedness in such rulings. The Court finds this claim procedurally defaulted.

Federal-habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87

28

(1977).  The doctrine is applicable when a petitioner fails to comply with a state-procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006).  "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state[-]procedural bar."  *Harris v. Reed*, 489 U.S. 255, 263-64 (1989) (citations omitted).  The last explained state-court judgment should be used to make that determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If that judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion.  *Id.*


In *Harrington*, --- U.S. at ---, 131 S.Ct. at 784-85, *supra*, the United States Supreme Court stated in pertinent part: "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."

With *Harrington* in mind, this Court finds that it is clear that the Court of Appeals did not reach the merits of this claim, but rather, it relied on state-law procedural principles in denying relief.  The Court of Appeals found that Dyer "abandon[ed]" his ineffective-assistance-of-counsel claim, stating, "Similarly, defendant *abandons* his cursory claim of ineffective assistance of counsel, because he fails to substantiate any of the errors cited or indicate how they prejudiced his defense." *Dyer*, 2006 WL 1328842, at *4 (emphasis added).

A review of Michigan cases shows that the principal of abandonment is regularly applied and is a ground independent of the merits case law.  Therefore, Dyer's failure to comply with state-

procedural rules concerning the preservation and the presentation of his claims in the Court of Appeals is considered a procedural default. *See People v. Watson*, 245 Mich.App. 572, 587, 629 N.W.2d 411 (2001) (citing *People v. Kelly*, 231 Mich.App. 627, 640-41, 588 N.W.2d 480 (1998); *Prince v. MacDonald*, 237 Mich.App. 186, 197, 602 N.W.2d 834 (1999)); *see also Santiago v. Booker*, No. 07-cv-15445, 2010 WL 2105139, at *17 (E.D. Mich. May 25, 2010) (procedural default where the petitioner abandoned his claim that prosecutor reduced the burden of proof); *Belanger v. Stovall*, No. 07-cv-11336, 2009 WL 2390539, at *21 (E.D. Mich. July 31, 2009) (state courts did not address the petitioner's claims because they were not raised as specific arguments and thus were procedurally defaulted); *Marchbanks v. Jones*, No. 1:06-CV-269, 2009 WL 1874191, *8 (W.D. Mich. June 26, 2009) (same) (citing *Watson*, 245 Mich.App. at 587, 629 N.W.2d at 421-22).

Habeas review of a procedurally defaulted claim is precluded unless Dyer can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Ineffective assistance of counsel may constitute cause for excusing a procedural default, but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment. *Murray*, 477 U.S. at 488; *Strickland v. Washington*, 466 U.S. 668, (1984). However, ineffective assistance of counsel adequate to establish cause for the procedural default can itself be an independent constitutional claim which is

procedurally defaulted, as it is in this case. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Consequently, an ineffective assistance of appellate counsel claim can serve as the cause to excuse that procedural default, but only if Dyer were able to satisfy the cause and prejudice standard with respect to the ineffective-assistance-of-appellate-counsel claim itself. *Lancaster v. Adams*, 324 F.3d 423, 438 (6th Cir. 2003). Dyer has not alleged ineffective assistance of appellate counsel to excuse the procedural default of his ineffective-assistance-of-counsel claim.

Because the Court finds Dyer's ineffective-assistance-of-counsel claim itself procedurally defaulted, and he does not allege ineffective assistance of appellate counsel as cause to excuse the

procedural default, the Court need not determine whether he was prejudiced, because he has not shown "cause" for his procedural default. *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003) (citing *Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000)).

However, as stated above, a procedural default may also be excused when a petitioner establishes that failing to review the claim would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. To demonstrate that a "fundamental miscarriage of justice" would occur absent review of a petitioner's claim, the petitioner must assert a credible claim of actual innocence that is supported by reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 315-16 (1995). To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329. In the procedural-default context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523

31

U.S. 614, 623-24 (1998). "To be credible, such a claim [of actual innocence] requires [Dyer] to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup*, 513 U.S. at 324.

Dyer offers no such new evidence that he is actually innocent of the crimes for which he was convicted. He has failed to meet the fundamental miscarriage of justice exception. Thus, his claim is procedurally barred and not subject to federal-habeas review.

Even if the Court were to find that Dyer's ineffective-assistance-of-counsel claim was not procedurally defaulted, the Court would nevertheless conclude that the claim lacks merit under *Strickland*. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, --- U.S. at ---, 131 S.Ct. at 788 (internal and end citations omitted).

In this case, Dyer cannot establish that counsel was deficient or that he was prejudiced by counsel's conduct because the underlying claims lack merit for the reasons set forth in the Court of Appeals's opinion, *Dyer*, 2006 WL 1328842, at *1-4, and in Section III, A through C, *supra*, of this opinion. A lawyer does not perform deficiently if he or she fails to advance a meritless argument. *Norris v. Schotten*, 146 F.3d 314, 336 (6th Cir. 1998); *Wilkey v. Jones*, No. 1:05-cv-588, 2009 WL 3153101, at * 16 (W.D. Mich. Sept. 28, 2009) (trial counsel's 'failure' to make a meritless objection on the issue did not satisfy *Strickland's* second prong, the prejudice prong) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 380 n.6 (1993) (Stevens, J., dissenting, joined by Blackmun, J.); *see also*

*Miller v. United States*, 2008 WL 4820776, at *5 (E.D. Mich. Nov. 5, 2008) ("[C]ounsel cannot be deemed ineffective for failure to raise a meritless objection.") (citing *Norris*, 146 F.3d at 336); *see also United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999); *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("The Sixth Amendment does not require counsel to forecast changes or advances in the law, or to press meritless arguments before a court."); *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989) ( "[F]ailure to raise a meritless legal argument does not constitute ineffective

assistance of counsel."); *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982) (stating that attorney's failure to raise meritless legal argument does not constitute ineffective assistance).

Against that backdrop, the Court concludes that Dyer is not entitled to habeas relief regarding his ineffective-assistance-of-counsel claim.

## I.  Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition.  Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]"  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U .S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong . . . .  When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that reasonable jurists would not find its assessment of Dyer's claims debatable or wrong.  Nor would reasonable jurists debate whether the Court's procedural-default ruling was correct.  The Court therefore declines to issue Dyer a certificate of appealability.

## IV.  CONCLUSION

The decisions by state courts in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  Dyer has failed to establish that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, **IT IS ORDERED** that Dyer's petition for a writ of habeas corpus [dkt. # 1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court declines to issue Dyer a certificate of appealability.

Dated:  February 24, 2011

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 24, 2011, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

---